# United States Court of Appeals

*for the*

# Third Circuit

Case No. 21-2288

PPG INDUSTRIES, INC, a Pennsylvania corporation,

*Plaintiff-Appellee,*

– v. –

JIANGSU TIE MAO GLASS CO., LTD, a Chinese company;
BENHUA WU, an individual; MEI ZHANG, an individual,

*Defendants-Appellants.*

On Appeal from the United States District Court for the Western District of Pennsylvania
*PPG Industries, Inc. v. Jiangsu Tie Mao Glass Co., LTD. et al.*,
District Court Civil No. 2:15-cv-00965

## APPELLEE'S BRIEF

DENTONS COHEN & GRIGSBY P.C.
ROBERT M. LINN
INGRID A. BOHME
625 Liberty Avenue
Pittsburgh, Pennsylvania 15222
Telephone: (412) 297-4900
Facsimile: (412) 209-1975
robert.linn@dentons.com
ingrid.bohme@dentons.com

QUINN EMANUEL URQUHART
 & SULLIVAN, LLP
WILLIAM A. BURCK
DEREK L. SHAFFER
ALEXANDER J. MERTON
1300 I Street, NW, Suite 900
Washington, DC 20005-3314
Telephone: (202) 538-8000
Facsimile: (202) 538-8100
williamburck@quinnemanuel.com
derekshaffer@quinnemanuel.com
ajmerton@quinnemanuel.com

*Counsel to PPG Industries, Inc.*

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Third Circuit Local Appellate Rule 26.1(b), PPG Industries, Inc. ("PPG") makes the following disclosure:

1. PPG has no parent corporation.

2. No publicly held corporations hold more than 10% of PPG's stock.

3. PPG is not aware of any publicly held corporation not a party to this appeal that has a financial interest in the outcome of this proceeding.

Dated: January 6, 2022

/s/ *Alexander J. Merton*
Alexander J. Merton
Quinn Emanuel Urquhart & Sullivan LLP
*Counsel to PPG Industries, Inc.*

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................ iv

PRELIMINARY STATEMENT ...........................................................................1

ISSUE PRESENTED.............................................................................................2

STATEMENT OF RELATED CASES OR PROCEEDINGS................................3

STATEMENT OF THE CASE................................................................................3

   I.   STATEMENT OF FACTS ....................................................................3

     A.  Appellants Willfully And Maliciously Acquired PPG's Trade Secrets......5

     B.  Appellants Willfully And Maliciously Used PPG's Trade Secrets ...........6

   II.  RELEVANT PROCEDURAL HISTORY ......................................................8

SUMMARY OF ARGUMENT ..........................................................................10

ARGUMENT .....................................................................................................12

   I.   STANDARD OF REVIEW ...................................................................12

   II.  MONETARY DAMAGES FOR UNJUST ENRICHMENT ARE LEGALLY AVAILABLE AND COMPATIBLE WITH INJUNCTIVE RELIEF UNDER CONTROLLING PENNSYLVANIA LAW ..................14

   III.  THE DISTRICT COURT ACTED WITHIN ITS DISCRETION BY CALCULATING AND AWARDING PPG'S UNJUST ENRICHMENT DAMAGES AS IT DID ................................................................................18

     A.  Research And Development Costs May Be Used To Calculate And Award Damages For Unjust Enrichment Under Pennsylvania Law And PUTSA ............................................................................20

B.  PPG's Research And Development Costs Fairly Represent The Amount Of Appellants' Unjust Enrichment Resulting From Their Misappropriation Of PPG's Opticor™ Technology ...............................................................26

IV.  THE DISTRICT COURT'S AWARD OF EXEMPLARY DAMAGES SHOULD BE SUSTAINED..........................................................................37

CONCLUSION ...........................................................................................................38

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Advanced Rsch. Sys., Inc. v. ColdEdge Techs., Inc.*, No. 3253 EDA 2012, 2014 WL 10979726 (Pa. Mar. 21, 2014) ....................................................................20

*Bailets v. Pa. Turnpike Comm'n.*, 645 Pa. 520 (2018) ..........................................22

*Bimbo Bakeries USA, Inc. v. Botticella*, 613 F.3d 102 (3d Cir. 2010) ...................22

*Bull v. United Parcel Service, Inc.*, 665 F.3d 68 (3d Cir. 2012) ............................34

*Calhoun v. Yamaha Motor Corp., U.S.A.*, 216 F.3d 338 (3d Cir. 2000) .................15

*Capogrosso v. 30 River Court East Urban Renewal Co.*, 482 F. App'x 677 (3d Cir. 2012) .......................................................................................................34

*Centennial Lending Group, LLC v. Seckel Capital, LLC*, No. 822 EDA 2016, 2017 WL 4861625 (Pa. Super. Ct., Oct. 26, 2017) .................................................18

*Children's Broad. Corp. v. Walt Disney Co.,* 357 F.3d 860 (8th Cir. 2004)...........25

*Comdyne I, Inc. v. Corbin*, 908 F.2d 1142 (3d Cir. 1990).......................................4

*Computer Print Sys. Inc. v. Lewis*, 422 A.2d 148 (Pa. Super. Ct. 1980).................22

*Deltak, Inc. v. Advanced Systems, Inc.*, 767 F.2d 357 (7th Cir. 1985) ....... 27, 28, 32

*DF Inst., LLC v. Dalton Educ., LLC*, No. 19-CV-452-JDP, 2020 WL 4597122 (W.D. Wis. Aug. 11, 2020)................................................................. 27, 32

*Epic Sys. Corp. v. Tata Consultancy Servs. Ltd.*, 980 F.2d 1117 (7th Cir. 2020)..24, 28, 29, 36

*HealthCare Advocates v. Affordable Healthcare Options*, No. CIV.A. 09-5839, 2010 WL 4665956 (E.D. Pa. Nov 18, 2010)................................................25

*Heraeus Med. GmbH v. Esschem, Inc.*, 927 F.3d 727 (3d Cir. 2019) .....................24

*Hill v. Best Medical Intern., Inc.*, No. 2-07-cv-01709, 2011 WL 6749036 (W.D. Pa. 2011) ................................................................................................23

*Hritz v. Woma Corp.*, 732 F.2d 1178 (3d Cir. 1984) ...............................................12

*Int'l Cartridge Corp. v. Kilgore Flares Co., LLC*, No. 441 WDA 2012, 2014 WL 10965434 (Pa. Super. Ct. Mar. 4, 2014).......................................................19

*Jazz Pharms., Inc. v. Synchrony Grp., LLC*, 343 F. Supp. 3d 434 (E.D. Pa. 2018) 24

*Mallet and Company Inc. v. Lacayo*, 16 F.4th 364 (3d Cir. 2021).........................24

*Molex Co., LLC v. Andress*, 887 F. Supp. 2d 1189 (N.D. Ala. 2012) .....................26

*Motorola Sols., Inc. v. Hytera Comm'cns Corp.*, 495 F. Supp. 687 (N.D. Ill. 2020) .................................................................................................................24

*Nicolo v. Patterson Belknap Webb & Tyler*, No. 2:13CV706, 2014 WL 1248034 (W.D. Pa. Mar. 26, 2014) ............................................................................21

*Philips North America LLC v. Summit Imaging Inc.*, No. C19-1745-JLR, 2021 WL 2118400 (W.D. Wash. May 25, 2021) .......................................................24

*Rainey v. Diamond State Port Corp.*, 354 F. App'x. 722 (3d. Cir. 2009)........ 12, 13

*Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76 (3d. Cir. 1994) .......................34

*Schroeder v. Com., Dep't. of Transp.*, 551 Pa. 243 (1998) ...................................34

*Steves & Sons, Inc. v. JELD-WEN, Inc.*, No. 3:16-CV-545, 2018 WL 2172502 (E.D. Va. May 1, 2018) ...............................................................................24

*Syntel Sterling Best Shores Mauritius Ltd. v. TriZetto Grp., Inc.*, No. 15 Civ. 211 (LGS), 2021 WL 1553926 (S.D.N.Y. Apr. 20, 2021).................................24

*Teva Pharmaceuticals USA, Inc. v. Sandhu*, 291 F. Supp. 3d. 659 (E.D. Pa. 2018) ......................................................................................................... 19, 24

*Univ. Computing Co. v. Lykes-Youngstown Corp.*, 504 F.2d 518 (5th Cir. 1974)..21

## **Statutes**

12 Pa. Cons. Stat. § 5302 (2016) .............................................................21

12 Pa. Cons. Stat. § 5304(a) (2016) ........................................... 13, 19, 21

12 Pa. Cons. Stat. § 5304 Uniform Law Comment ........................ 15, 17

18 U.S.C. § 1836 (b)(3)(B)(i)(II) (2016) ................................................23

## **Other Authorities**

Restatement (Third) of Restitution and Unjust Enrichment § 42 cmt. f, illus. 5
      (Am. Law Inst. 2011)....................................................................13

## **Rules**

Fed. R. Civ. P. 37(e)................................................................................33

## PRELIMINARY STATEMENT

This case involves egregious misconduct by the Defendants-Appellants—willful and malicious misappropriation of trade secrets, followed by a complete failure to appear and participate in discovery below, before later challenging their default—and a straightforward award of damages. It is uncontested that Appellants Jiangsu Tie Mao Glass Co., Ltd. ("TMG"), TMG Chairman and CEO Benhua Wu, and TMG Engineer and Purchasing Agent Mei Zhang (collectively, "Appellants" or "Defendants") willfully and maliciously misappropriated PPG's trade secrets, in flagrant violation of the Pennsylvania Uniform Trade Secrets Act ("PUTSA"). The only thing challenged on appeal is the District Court's calculation of damages under Pennsylvania law and PUTSA.

Yet the District Court's approach to calculating damages was not only sound, but irreproachable. After finding that Defendants engaged in "a long-running scheme to steal and cheat" from PPG (A37), and that "PPG makes a persuasive case that it is well past time for Defendants to pay up" (*id.*) to compensate PPG, the District Court adopted a theory of unjust enrichment, as expressly authorized by PUTSA, and measured that unjust enrichment by the costs PPG had incurred to research and develop its trade secrets at issue—costs that Appellants avoided by stealing the trade secrets from PPG. As the District Court explained, "it makes perfect sense to consider the time and money PPG spent developing the

1

misappropriated trade secrets when the Court decides how much Defendants benefited from stealing those secrets." A36.

Appellants argue that the District Court somehow ventured beyond the pale by so reasoning. But their arguments are misconceived, at best, and smack of unfairness. It should suffice to note that this Court's precedent and Pennsylvania law align against them. Were that not enough, the District Court also warned why crediting Appellants' position would "raise serious incentive concerns" and "run[] completely counter to the purpose of modern civil litigation, common sense, [and] substantial justice." A36-37. In particular, "Defendants' late-arriving arguments would incentivize parties to refuse to participate in litigation on the merits, thus depriving the plaintiff of a fair shot to uncover relevant information during discovery, then claim that because the plaintiff cannot tell the Court information that only the defendant is likely to know [*i.e.,* all of the ways they have benefitted from their unlawful misappropriation], the plaintiff must get nothing." A37.

That well sums up the folly of Appellants' instant arguments to this Court. Even now, Appellants lack any real rejoinder. Their arguments should be rejected and the judgment should be affirmed.

## ISSUE PRESENTED

The sole issue posed on appeal in this case concerns the calculation of damages, and, more specifically, whether the District Court violated the law by using

2

its chosen methodology. Appellants do not challenge the District Court's findings that they violated PUTSA by willfully and maliciously misappropriating PPG's trade secrets. Nor do Appellants dispute that they are due to be held liable for misappropriating PPG's protected trade secrets and that PPG is entitled to recover its damages. The one question thus posed by Appellants is:

> Whether the District Court erred by calculating the amount of Appellants' unjust enrichment based upon the costs that Appellants would have incurred in order to acquire or create legitimately the trade secrets that they instead stole from PPG?

## STATEMENT OF RELATED CASES OR PROCEEDINGS

This case has not previously been before this Court. In 2020, TMG filed suit in Chinese court against PPG seeking up to RMB 230 million (USD $35.1 million) for PPG's alleged "malicious initiation of intellectual property litigation" against Appellants in this case. ECF No. 172-1 at 14-17. That matter is still open and currently pending in China.

## STATEMENT OF THE CASE

### I. STATEMENT OF FACTS[1]

PPG is a Pittsburgh-based Fortune 500 Company and leading worldwide supplier of paints, coatings, optical products, and specialty materials, including

---

[1] The relevant facts are undisputed. Following the District Court clerk's entry of a Default, which Appellants do not contest, all factual allegations of the complaint, except those relating to the amount of damages, must be taken as true.

specialized aircraft windshields, windows, and transparent armor; it supplies various offerings to commercial and military aviation segments. A111 ¶1; A114 ¶12. As part of PPG's core business, PPG researched and developed a proprietary manufacturing process for a new type of aircraft window—dubbed the Opticor™ Technology. A119 ¶26; A367-68 ¶¶2-3. Between 2004 and 2015, PPG sunk at least $8,805,929 and more than a decade of energy into successfully developing the Opticor™ Technology. A85; A368-72 ¶¶5-6, 11-14.

To protect its investment, PPG adopted extensive measures to guard its proprietary technology. PPG developed a document detailing the Opticor™ Technology ("PPG Proprietary Report") for the exclusive benefit of its employees, password protected it, and labeled it as "PPG Confidential" on each page. A239 ¶18. Only by signing a series of confidentiality agreements at the beginning and end of their employment were PPG's personnel permitted to access the PPG Proprietary Report and other such proprietary materials. A115-17 ¶¶16, 18, 20, 21; *see also* A237 ¶14. Beyond that, PPG further limited *which* employees had access to its "Classified Information," including the Opticor™ Technology, and required those

---

*Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990). Notably, Appellants have never contested any aspect of the record with regard to liability and have conceded they have no meritorious defense against PPG's claims. A419; A443.

employees to sign *additional* agreements specifically pertaining to the confidentiality of Classified Information.  A116-17 ¶¶18-19.

### A.    Appellants Willfully And Maliciously Acquired PPG's Trade Secrets

In February 2015, PPG learned that TMG, one of its China-based competitors, and TMG's personnel had colluded with a former PPG Senior Research Associate, Thomas Rukavina, to unlawfully acquire PPG's trade secrets, including the Opticor™ Technology.  *See* A2; A235-36 ¶¶6, 9.

For example, on or about March 2, 2013, a TMG employee contacted Rukavina and asked him whether he signed "any type of confidential agreement and/or non-competitive agreement with PPG" or whether "the technology […] which will be used . . . violating [*sic*] PPG's IP."  A237 ¶14.  In response, Rukavina wrote:  "When you join and when you leave PPG you are forced to sign these documents. Of [sic] you follow these documents as written you could never work again [. . . .] I think I made my point!!"  *Id.*; *see also* A118 ¶¶23-24.

Even after Rukavina confirmed that he was bound by PPG's confidentiality agreements, TMG, Benhua Wu, and Mei Zhang paid Rukavina over $100,000 between July 2014 and May 2015 to violate his legal commitments along with PPG's rights to protect its trade secrets.  A2; A340; *see also* ECF 136-1 at 22-72.  Among other things, Rukavina misappropriated for TMG the PPG Proprietary Report, which detailed PPG's manufacturing processes, designs, equipment, and materials for

PPG's Opticor™ Technology; these yielded a floor plan for a brand-new, vertically-integrated TMG aircraft window facility that TMG was then set to build in China out of PPG's trade secrets.  A238 ¶16; A244-45 ¶¶4-5; *see also* ECF 136-1 at 9.

But that was not all.  Despite knowing full well that Rukavina was bound by PPG's confidentiality agreements, Appellants spent the next two years pushing Rukavina to hand over more and more of PPG's intellectual property.  Along the way, Appellants flew Rukavina throughout the United States and to China to meet with Benhua Wu and Mei Zhang so he could discuss how to manufacture new products based on PPG's stolen trade secrets.  A41-43; A119 ¶28.  Given their protracted, multi-faceted, underhanded campaign, "there is no way for Defendants to claim they did not know Rukavina provided the documents in violation of his secrecy obligations," as the District Court concluded.  A31.

### B.    Appellants Willfully And Maliciously Used PPG's Trade Secrets

Nor is there any mystery as to *why* Appellants did what they did:  They did it to enrich themselves.  As they were willfully and maliciously stealing what they knew to be PPG's trade secrets, they were putting those secrets to use for TMG.  A31.  Although the record was developed without any cooperation by TMG (which defaulted without producing any discovery, A3), it demonstrates that TMG was in fact working to leverage its ill-gotten gains.

For example, in February 2015, Mei Zhang (Defendant engineer and purchasing agent of TMG) emailed Rukavina confirming that preparations were underway at TMG in China to begin manufacturing products based on PPG's trade secrets. A31; *see also* ECF No. 136-1 at 77. That same month, Zhang emailed Rukavina with a link to one of PPG's subcontractors, Alle-Kiski Industries ("AKI"), and asked whether she should contact AKI about PPG proprietary molds (which are exclusively used for the Opticor™ Technology) that it was manufacturing for PPG. A122 ¶38; *see also* A240-41 ¶22-25; ECF No. 136-1 at 75. Rukavina emailed Zhang back that same day to warn her that "the drawings are labeled 'PPG Proprietary' so my guess is that they will not make them for us." A122 ¶38; A240-41 ¶22; *see also* ECF No. 136-1 at 75. Undeterred, Zhang responded that she had "removed the logo of PPG and their company name from the pictures" and then "sent an email to the [AKI] purchasing manager." A43; A241 ¶23; *see also* ECF No. 136-1 at 81.

Although it turns out that AKI did not fulfill that order from Zhang, the District Court observed that it is "hard to conjure up a more perfect example of willful and malicious misappropriation than knowingly pushing a company's angry former employee to breach multiple confidentiality agreements and provide stolen proprietary documents, removing the company's logo and other indicia from those stolen proprietary documents, then using those stolen files in hopes of having one of

the company's suppliers manufacture the proprietary technology outlined in the stolen files." A43-44.

## II.   RELEVANT PROCEDURAL HISTORY

On July 24, 2015, PPG initiated this action against TMG, Wu, and Zhang, seeking to recover for their willful and malicious misappropriation of PPG's trade secrets. A111-37. Although Defendants knew about PPG's lawsuit from as early as September 19, 2015—the date that the first of TMG's multiple United States-based counsel contacted PPG's counsel to discuss this matter—Defendants refused to enter an appearance in this matter for four years. A2-3; A145-47. In the meantime, PPG spent millions of dollars and a great deal of time and effort attempting to ascertain the nature and scope of Appellants' theft of PPG's trade secrets. A172-73 ¶¶6-9.

In October 2017, PPG obtained an entry of default against Defendants from the Clerk of the Court (A138), and, in May 2019, PPG moved the District Court for a default judgment and permanent injunction against all Defendants (A139-66). At the eleventh hour, in September 2019, Defendants suddenly entered an appearance and moved to set aside the October 2017 default (*see* ECF Nos. 129 and 130) while concurrently opposing PPG's motion for default judgment and permanent injunction (*see* ECF 144).

Following briefing and argument, on March 31, 2020, the District Court denied Defendants' motion to set aside their default, granted PPG's motion for a

permanent injunction against all Defendants in full, and granted PPG's motion for default judgment to the following extent:

- **Adjudged:** Defendants, jointly and severally, violated PUTSA by willfully and maliciously misappropriating PPG's trade secrets including, among other things, a PPG proprietary report that detailed the manufacturing process for the Opticor™ Technology;

- **Adjudged:** Defendants are liable to PPG for damages under PUTSA based on their unjust enrichment in the amount of PPG's research and development costs related to the trade secrets Defendants misappropriated;

- **Adjudged:** Defendants are liable to PPG for the maximum allowable exemplary damages permissible under PUTSA based on their willful and malicious misappropriation of PPG's trade secrets; and

- **Adjudged:** Defendants are liable to PPG under PUTSA for PPG's reasonable attorneys' fees, expenses, and costs.

A1-60.

The District Court deferred judgment as to the specific amount of monetary damages Defendants should owe PPG, pending the parties' efforts to mediate and potentially settle any outstanding disputes surrounding PPG's monetary damages. A55-56. After mediation proved unsuccessful, both parties provided additional briefing specifically addressing damages (A350-412), and on June 8, 2021, the District Court entered an Opinion and Judgment Order awarding PPG $8,805,929 in monetary damages and $17,611,858 in exemplary damages and issuing detailed findings supporting those amounts. A61-87.

9

This appeal timely followed to challenge the District Court's calculation of damages.  A88.

## SUMMARY OF ARGUMENT

Appellants' bid for reversal reduces to the premise that the District Court cannot, as a matter of law, award unjust enrichment damages calculated in terms of the costs Appellants would have incurred in order to develop on their own the trade secrets that they instead stole from PPG.  Their premise, in turn, carries worrisome implications—implications that would enable willful malefactors including these Appellants to thumb their noses at courts, withhold discovery that would further illuminate and pinpoint their ill-gotten gains, and then blithely deny that they have been enriched to any quantifiable extent.  Not only does their premise lack any support in law, equity or common sense, but it offends all three.

Courts in Pennsylvania accord with a larger judicial consensus that, absent reliance upon the profits a plaintiff has lost due to misappropriation, a plaintiff may recover damages based upon the value of a defendant's unjust enrichment, as measured specifically by the costs the defendant would have incurred to legitimately acquire or create the property it misappropriated.  Although Appellants claim the permanent injunction entered against them foreclosed the District Court from finding evidence to support a claim for monetary damages, and also claim they did not

ultimately "benefit" from PPG's research and development, their arguments defy settled law combined with the undisputed facts of this case.

In citing the District Court's injunction to impugn its damages award, Appellants ignore the distinct role each properly plays:  Unjust enrichment damages serve to redress *past* harms while a permanent injunction separately addresses potential *future* harms, such as lost profits.  The propriety of such a damages award is beyond question where, as here, the defendants were unconstrained in their enrichment and misuse of PPG's trade secrets for an extended period (here, five to seven years) before any injunction was in place.

Neither is a trial court powerless to pierce and remedy the black box defendants create, as these Appellants have, by withholding any discovery into specifics of the commercial profits and benefits they have derived from their misappropriation.  Rather, this Court has aligned with other courts in recognizing that a defendant necessarily benefits from depriving another party of its exclusive trade secrets, and that such benefit is properly measured and redressed specifically by calculating the amount of research and development costs the defendant thereby avoided.  Appellants fail to cite any case, from any court, that has ever embraced the anomalous proposition they now advance, which is that a trial court *cannot*, in reasonable exercise of its discretion, use avoided research and development costs to calculate and award unjust enrichment damages in the absence of any discovery or

11

proof that points a different way. Especially given undisputed evidence that Appellants acquired PPG's trade secrets to avoid spending the time and money required to legitimately develop the trade secrets they stole from PPG, this Court should not hesitate to affirm the District Court's sound exercise of its discretion in awarding the damages here at issue.

## ARGUMENT

## I.    STANDARD OF REVIEW

All parties agree that this Court reviews "the District Court's handling of a default judgment, ***including its computation of damages*** […] for abuse of discretion only." *Rainey v. Diamond State Port Corp.*, 354 F. App'x. 722, 724 (3d. Cir. 2009) (emphasis added) (*citing Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984)); *see also* Appellants' Br. at 12-13.

Appellants nevertheless occasionally formulate their damages challenge as though it is purely legal, arguing as though this Court should be reviewing *de novo* the relevant portion of the District Court's damages award—specifically in assessing whether the District Court "applied the proper measure of damages." Appellants' Br. at 13. But Pennsylvania law ends any such legal argument before it begins. All agree that the District Court measured damages in terms of the amount of Appellants' "unjust enrichment." A33-34; *see also* Appellants' Br. at 11. That operative measure of damages ***is expressly authorized*** by PUTSA's plain language,

which entitles PPG to recover "the ***unjust enrichment*** caused by [Appellants'] misappropriation that is not taken into account in computing actual loss." *See* 12 Pa. Cons. Stat. § 5304(a) (2016) (emphasis added); *see also* Appellants' Br. at 16 ("PUTSA permits recovery for either the plaintiff's lost profits or the defendant's unjust enrichment."). To the extent that Appellants quarrel with the District Court's award as a matter of law, they do little to deny that unjust enrichment is an available measure of damages, just as the District Court ruled.[2] This basic legal premise is neither challenged nor subject to serious reproach.

In the main, Appellants are challenging the specific means by which the District Court saw fit to calculate Appellants' unjust enrichment—namely, by crediting evidence of PPG's research and development costs as reflecting "the costs that [the Defendants] would have incurred to acquire or create equivalent materials by legitimate means." *See* A66 (*citing* Restatement (Third) of Restitution and Unjust Enrichment § 42 cmt. f, illus. 5 (Am. Law Inst. 2011)). Such a fact-specific approach to calculating the specific amount of unjust enrichment falls squarely within the District Court's discretion, and it should not be reversed unless this Court perceives an abuse of that discretion. *See Rainey,* 354 F. App'x. at 724. That Appellants do

---

[2] For the avoidance of doubt, this is not a case in which PPG separately recovered damages pegged to its "actual loss" so as to take unjust enrichment out of play under PUTSA, nor do Appellants argue otherwise.

not even purport to identify any actual abuse of discretion is telling, and, indeed, dispositive.

## II.   MONETARY DAMAGES FOR UNJUST ENRICHMENT ARE LEGALLY AVAILABLE AND COMPATIBLE WITH INJUNCTIVE RELIEF UNDER CONTROLLING PENNSYLVANIA LAW

Appellants submit that the permanent injunction prohibiting them from further misappropriating or using PPG's trade secrets somehow foreclosed the District Court from finding evidence to support unjust enrichment damages.  According to Appellants, the District Court's decision to enter both monetary damages and a permanent injunction amounts to "double recovery" on the theory that Appellants' unjust enrichment is associated with their "potential future use." Appellants' Br. 19. But this argument is meritless on its face, as Appellants are overlooking the role that monetary damages properly play in redressing *past* harm, quite different from anything *prospective*.

Although Appellants are (properly) enjoined from using PPG's trade secrets in the future, the permanent injunction by no means remediates the harm PPG suffered and the unjust enrichment Appellants realized between the time TMG acquired PPG's trade secrets and the entry of an injunction.  Contrary to Appellants' assertion, therefore, PPG's permanent injunction against Appellants does not preclude PPG from recovering for TMG's unjust enrichment throughout intervening years, which is what underlies and justifies the monetary award at issue.

14

Lest there be any doubt that damages are properly awarded alongside the injunction, the Uniform Law Comment of PUTSA expressly so instructs: "[a] claim for actual damages and net profits *can be combined* with a claim for injunctive relief [. . . .] Monetary relief *can be appropriate whether or not injunctive relief is granted* under Section 2." 12 Pa. Cons. Stat. § 5304 Uniform Law Comment (emphases added). If "both claims are granted, the injunctive relief ordinarily will preclude a monetary award *for a period in which the injunction is effective*." *Id.* (emphases added). To the extent that an injunction does not wholly compensate a plaintiff, therefore, damages still obtain. *See also Calhoun v. Yamaha Motor Corp., U.S.A.*, 216 F.3d 338, 347 (3d Cir. 2000) ("The purpose of compensatory damages is to make the plaintiff whole."). The cases Appellants cites from other jurisdictions conform with this unremarkable principle, *see* Appellants' Br. at 18-19, particularly insofar as they all involve instances in which either injunctive relief or monetary damages, by themselves, sufficed to make a plaintiff whole.

In this case, by contrast, PPG's permanent injunction by no means rectifies Appellants' past wrongs. Whereas the permanent injunction was not entered until March 31, 20**20** (A58), Appellants misappropriated PPG's trade secrets as early as seven years earlier, in 20**13**. A118 ¶23; A220; A224; A237 ¶14. By spring 20**15**, five years preceding the injunction, Appellants had already unjustly enriched themselves by improperly acquiring and using PPG's trade secrets. A122 ¶¶38-41;

15

*see also* A240-41 ¶22-25; ECF No. 136-1 at 81.  Throughout the intervening years,

nothing protected PPG, nor did anything constrain Appellants from unjustly

enriching themselves by surreptitiously misappropriating and misusing PPG's trade

secrets to their hearts' content.

To be sure, because Appellants opted to default without engaging in

discovery, the record is necessarily bereft of internal documents that would reveal

all the hidden details of what exactly TMG was doing, and when, under cover of

darkness.  *See* A37.  But TMG cannot possibly ***exculpate*** itself on the theory that its

***concealment*** of years and years of misconduct somehow ***disproves*** the intervening

harm PPG suffered before obtaining the injunction on March 31, 2020.  *See* A32;

A36-37.  It suffices to note that Appellants have conceded they were in fact

misappropriating and misusing PPG's trade secrets without limitation for years

before the injunction was entered,[3] and that PUTSA expressly authorizes the award

of monetary damages to compensate for past harm in any such case, even as an

injunction protects against further harm prospectively.  Nor did the District Court

have any misconception in this regard.  To the contrary, it made clear that its

---

[3] A443 (The Court:  "So [Defendants] would not contest liability.  They would contest damages?" Defendants' Counsel: "Yes."  The Court:  "So they would be forced to admit they did it.  It just didn't hurt anyone." Defendants' Counsel: "Ostensibly.")

16

monetary award and calculation of unjust enrichment went to redressing harm in the extended period preceding its injunction.[4]

In sum, PPG is entitled to recover the $8.8 million for Appellants *retrospective* unjust enrichment of themselves, at the same time that PPG is entitled to the permanent injunction that separately protects against *prospective* damages, such as potential lost profits. 12 Pa. Cons. Stat. § 5304 Uniform Law Comment. While the monetary damages compensate PPG for its pre-injunction harm, the permanent injunction protects PPG from forward-looking damages including lost profits. By no fair reading of the law does award of the permanent injunction preclude the award of monetary damages to compensate for unjust enrichment that had already occurred. And by no fair reading of the decision below does it award monetary damages for something other than past misconduct and the research and development costs that Appellants would already have incurred had they done things correctly.

---

[4] *See, e.g.*, A35 ("The Record contradicts Defendants' claim that they did not use PPG's trade secrets [during the years preceding the injunction]."); A37 ("While the Court agrees that PPG has not (yet) established that Defendants used the trade secrets to manufacture any products, that is not the same as saying Defendants actually did not do so. There is substantial uncertainty as to what Defendants did with the stolen PPG trade secrets [. . . .] Defendants' refusal to participate deprived PPG of the opportunity to engage in discovery that could have shed light on Defendants' broader conduct."); A36 ("Defendants were not just buying a product from Rukavina, they were buying time. So it makes perfect sense to consider the time and money PPG spent developing the misappropriated trade secrets when the Court decides how much Defendants benefited from stealing those secrets.").

III.    **THE DISTRICT COURT ACTED WITHIN ITS DISCRETION BY CALCULATING AND AWARDING PPG'S UNJUST ENRICHMENT DAMAGES AS IT DID**

Given the soundness of the District Court's legal premises, Appellants have no serious argument for reversal.  All the District Court did in this case was apply settled law (authorizing damages for unjust enrichment) to uncontested facts (establishing Appellants' egregious, willful misappropriation of PPG's trade secrets), while reasonably exercising its discretion to calculate the specific amount of those damages (using PPG's research and development costs that TMG had avoided incurring).  There simply is no abuse of discretion to be found in these circumstances.

Again, it remains uncontested that Appellants willfully and maliciously misappropriated PPG's trade secrets in violation of PUTSA, just as the District Court found.  Pennsylvania courts have confirmed that improper acquisition of a protected trade secret **and/or** its improper use each **separately** gives rise to liability under PUTSA.  *See Centennial Lending Group, LLC v. Seckel Capital, LLC*, No. 822 EDA 2016, 2017 WL 4861625, at *7 (Pa. Super. Ct. Oct. 26, 2017) ("Under the PUTSA […] [m]isappropriation is defined as either acquisition of a trade secret […] or

18

disclosure or use of a trade secret [….] Notably, use is not a required element of either definition.") (internal quotations omitted).[5]

Appellants have conceded that they misappropriated PPG's trade secrets under both prongs, by misappropriating as well as using the relevant trade secrets. *See* A443.[6]  Their admission of liability before the District Court was unequivocal and unqualified. *See id.*  Once a party is found to have misappropriated a trade secret in any form, PUTSA authorizes a court to award damages based on lost profits and/or unjust enrichment as appropriate.  12 Pa. Cons. Stat. § 5304(a) (2016) ("Damages can include both the actual loss caused by misappropriation and the unjust enrichment caused by misappropriation that is not taken into account in computing actual loss.").

According to Appellants, although the District Court was correct to enter a default judgment against them, it then somehow erred in awarding damages as it did

---

[5] *See also Int'l Cartridge Corp. v. Kilgore Flares Co., LLC*, No. 441 WDA 2012, 2014 WL 10965434, at *14-16 (Pa. Super. Ct. Mar. 4, 2014); *Teva Pharmaceuticals USA, Inc. v. Sandhu*, 291 F. Supp. 3d. 659, 681 (E.D. Pa. 2018) (holding allegations that defendants acquired confidential information from a competitor's employee sufficed to state a claim for improper acquisition).

[6] *See also* Appellants' Br. at 4 ("Ms. Zhang sent an email to a PPG subcontractor and, using the [confidential and proprietary] information that she had obtained from Rukavina, requested the subcontractor to manufacture certain manufacturing molds 'that were manufactured for PPG.'"); *Id.* at 28 ("Defendants do not dispute that PPG suffered harm – that necessarily follows from the default judgment on liability.").

19

for their misappropriation.  By their account, PPG's damages for Appellants' unjust enrichment could not properly be calculated based upon the research and development costs that TMG avoided by misappropriating PPG's trade secrets.  *See* Appellants' Br. 11-12, 20-29.  But their argument finds no purchase against the backdrop of facts that are undisputed and a record that is one-sided.  Even worse, their argument would invite scofflaws to misappropriate trade secrets, then withhold discovery illuminating specifics of how they profited, then argue that courts lack any basis to calculate and award substantial damages against them based on their unjust enrichment.  The District Court was pointed in articulating and guarding against the grave concerns thus posed, *see* A36-37, yet Appellants have no purported answer to them—*none*.  This Court should reject Appellants' arguments and affirm the District Court's exercise of its discretion.

**A.    Research And Development Costs May Be Used To Calculate And Award Damages For Unjust Enrichment Under Pennsylvania Law And PUTSA**

Pennsylvania courts applying PUTSA have agreed that courts may award damages thereunder based entirely on unjust enrichment.  *See Advanced Rsch. Sys., Inc. v. ColdEdge Techs., Inc.*, No. 3253 EDA 2012, 2014 WL 10979726, at *8 (Pa. Super. Ct. Mar. 21, 2014) (describing the availability of exemplary damages under PUTSA following "an award of damages based on actual loss **and/or** unjust enrichment") (emphasis added); *Nicolo v. Patterson Belknap Webb & Tyler*, No.

20

2:13CV706, 2014 WL 1248034, at *4 (W.D. Pa. Mar. 26, 2014) ("A [PUTSA] violation **under either prong gives rise** to the right to injunctive relief and the ability to recover damages for actual loss caused by the misappropriation **and unjust enrichment not included within the recovery of actual loss.**") (emphases added).

Nor has Pennsylvania's legislature statutorily circumscribed the means by which damages for unjust enrichment are to be calculated. *See* 12 Pa. Cons. Stat. §§ 5302; 5304(a) (2016). Even setting aside the controlling legislative judgment, there is no reason to superimpose any judicially-invented, extra-statutory constraint in this context. By their very nature, trade secrets cases "require[] a flexible and imaginative approach to the problem of damages." *Univ. Computing Co. v. Lykes-Youngstown Corp.*, 504 F.2d 518, 538 (5th Cir. 1974); *see also* A37 ("Unjust enrichment provides the Court with a remedy and method of damages calculation that is flexible enough to capture and value the harm flowing from Defendants' conduct.").

For their part, Pennsylvania courts have long interpreted unjust enrichment in trade secrets cases to include costs the defendant would have incurred if it had developed a product through legitimate means, rather than through misappropriation. *See Computer Print Sys., Inc. v. Lewis*, 422 A.2d 148, 157 (Pa.

Super. Ct. 1980) (upholding, under Pennsylvania common law,[7] an unjust enrichment award based on evidence of the costs the defendants would have incurred if they had not utilized plaintiff's trade secrets).  Any quarrel Appellants may have with a court's reliance upon research and development costs to calculate unjust enrichment damages under PUTSA finds no support in Pennsylvania law.  In fact, the Pennsylvania Supreme Court recently affirmed that "[t]he assessment of damages is peculiarly within the province of the factfinder and an award will not be upset on appeal unless it is so excessive as to shock the conscience of the court or it is clearly based on partiality, prejudice or passion." *Bailets v. Pa. Turnpike Comm'n.*, 645 Pa. 520, 540 (2018).  Tellingly, Appellants cite not a single Pennsylvania case that even hints at the restrictive approach they now urge upon this Court as their claimed basis for reversal.

To the extent that Appellants look outside of Pennsylvania to ground their damages critique, they take a wrong turn that ultimately leads nowhere (for no cited case, from anywhere, would foreclose a district court from using the measure of trade secrets damages that was used here in exercise of its discretion).  Pennsylvania courts interpreting Pennsylvania law have pointed to other jurisdictions'

---

[7] *See Bimbo Bakeries USA, Inc. v. Botticella*, 613 F.3d 102, 109 n.7 (3d Cir. 2010) ("The PUTSA displaced Pennsylvania's common law tort for misappropriation of trade secrets.").

interpretation of the Uniform Trade Secret Act as the single best guide.  For example, in *Krafft v. Downey*, the Pennsylvania Superior Court followed the approach of the Western District of Pennsylvania[8] to interpret PUTSA's definition of "bad faith," on which neither this Court nor the Pennsylvania Supreme Court had yet spoken.  68 A.3d 329, 335-36 (Pa. Super. Ct. 2013).  The *Krafft* court observed that "the Pennsylvania Rules of Statutory Construction require that '[s]tatutes uniform with those of other states [such as PUTSA *vis a vis* states that have enacted their own version of the Uniform Trade Secrets Act] shall be interpreted and construed to effect their general purpose to make uniform the laws of those states which enact them.'" *Id.* at 335.  Accordingly, *Krafft* held that the Pennsylvania courts should generally follow the definitions and approaches adopted by other states under the Uniform Trade Secrets Act.  *Id.* at 336.  No Pennsylvania court has held differently.

Once the Uniform Trade Secrets Act is looked to as the touchstone, any outlier cases Appellants might cite for any support (however peripheral and faint) fall by the wayside.  Courts interpreting the state and federal trade secrets statutes[9] have

---

[8] *See Hill v. Best Medical Intern., Inc.*, No. CA 07-1709, 2011 WL 6749036 (W.D. Pa. Dec. 22, 2011).

[9] The "Defend Trade Secrets Act of 2016," 18 U.S.C. § 1836 (b)(3)(B)(i)(II) (2016) ("DTSA"), and state versions of the Uniform Trade Secrets Act are materially identical in permitting unjust enrichment damages.  The DTSA provides "damages for any unjust enrichment caused by the misappropriation of the trade secret that is not addressed in computing damages for actual loss," while the UTSA (including

expressly agreed that unjust enrichment damages for misappropriating a trade secret can be based on the research and development costs that a defendant would otherwise have incurred, just as occurred here.[10]  Most importantly, this Court has

PUTSA) provides "unjust enrichment caused by misappropriation that is not taken into account in computing actual loss."  12 Pa. Cons. Stat. § 5304(a) (2016).  This Court has consistently concluded that the same analysis applies under the DTSA, other forms of the Uniform Trade Secrets Act, and PUTSA. *See Mallet and Company Inc. v. Lacayo*, 16 F.4th 364, 381 n.19 (3d Cir. 2021) ("The DTSA and PUTSA are substantially similar, as both are closely related to the Uniform Trade Secrets Act.); *Heraeus Med. GmbH v. Esschem, Inc.*, 927 F.3d 727, 736 (3d Cir. 2019) ("The Pennsylvania General Assembly based the PUTSA on the provisions of the Uniform Trade Secrets Act."); *Oakwood Labs. LLC v. Thanoo*, 999 F.3d 892, 910 (3d Cir. 2021) ("[Congress] recognized the DTSA and the [Uniform Trade Secrets Act] as similar."); *Teva Pharms. USA, Inc. v. Sandhu*, 291 F. Supp. 3d 659, 675 (E.D. Pa. 2018) (consolidating the analysis of claims under the DTSA and PUTSA); *Jazz Pharms., Inc. v. Synchrony Grp., LLC*, 343 F. Supp. 3d 434, 444-45 (E.D. Pa. 2018) (same).

[10] *See, e.g., Philips North America LLC v. Summit Imaging Inc.*, No. C19-1745-JLR, 2021 WL 2118400, at *6 (W.D. Wash. May 25, 2021) ("In trade secret misappropriation cases, avoided research and development costs have been recognized as one way to measure the benefit conferred on the defendant."); *Syntel Sterling Best Shores Mauritius Ltd. v. TriZetto Grp., Inc.*, No. 15 Civ. 211 (LGS), 2021 WL 1553926, at *6 (S.D.N.Y. Apr. 20, 2021) ("'[A]voided costs' – *i.e.* the development costs that [the misappropriating party] avoided incurring when it misappropriated [the other party's] trade secrets […] are recoverable as damages for unjust enrichment under the DTSA and its state law counterparts derived from the Uniform Trade Secrets Act"); *Epic Sys. Corp. v. Tata Consultancy Servs., Ltd.*, 980 F.3d 1117, 1130 (7th Cir. 2020) (awarding damages "based on the 'head start' [defendant] gained in development and competition," calculated by the benefit the defendant received from avoided research and development costs); *Motorola Sols., Inc. v. Hytera Comm'cns Corp.*, 495 F. Supp. 687, 707-10 (N.D. Ill. 2020) (ratifying jury's award of defendant's avoided research and development costs as unjust enrichment under the DTSA); *Steves & Sons, Inc. v. JELD-WEN, Inc.*, No. 3:16-CV-545, 2018 WL 2172502, at *6 (E.D. Va. May 10, 2018) (explaining that avoided

already instructed that unjust enrichment damages can properly be based upon the research and development costs that a defendant has avoided by misappropriating. In *Oakwood Laboratories LLC v. Thanoo*, the Court held that courts should use a "flexible" approach to calculate damages for misappropriation of trade secrets, and, in doing so, specifically endorsed reliance upon the "research and development costs that [the plaintiff] has already invested in its own product development" and that "the defendant avoided incurring through misappropriation." 999 F.3d at 914 n.21.

Tellingly, no case cited by Appellants ***prohibits*** using a plaintiff's research and development costs to calculate the amount of unjust enrichment; at most, they might support the proposition (quite different from that on which Appellants' bid for reversal depends) that a district court has ***discretion*** to opt against this particular measure. The one decision of this Court that Appellants cite, *HealthCare Advocates v. Affordable Healthcare Options*, ruled merely that the costs of developing trade secrets are unfit to measure ***lost profits***. No. CIV.A. 09-5839, 2010 WL 4665956, at *2 (E.D. Pa. Nov. 18, 2010). The District Court was exactly right to distinguish *HealthCare Advocates* as it did: "unlike here, th[at] plaintiff only invoked a lost

---

costs are "appropriately considered" a part of the trade secret plaintiff's "unjust enrichment damages" recoverable under the DTSA and Texas Uniform Trade Secrets Act); *Children's Broad. Corp. v. Walt Disney Co.,* 357 F.3d 860, 866 (8th Cir. 2004) (upholding a jury award where the evidence showed that defendants "accelerated their entry into the market by using [Plaintiff's] information").

profits theory of damages—meaning that the plaintiff relied on the 'actual loss' prong of PUTSA's damages provision," and the district court there had "specifically noted that plaintiff did not invoke PUTSA's unjust enrichment prong."  A35.

In another of Appellants' cited cases, *Molex Co., LLC v. Andress*, 887 F. Supp. 2d 1189, 1196 (N.D. Ala. 2012), the court found that the plaintiff's product development costs, without more, were not "strong evidence" of plaintiff's damages for purposes of establishing diversity jurisdiction at the threshold.  But that complaint-specific determination by a trial court on a barren record stops well short of categorically rejecting across all cases the use of product development costs as a potential way to calculate unjust enrichment damages.  Nothing cited by Appellants suggests that a trial court generally abuses its discretion or otherwise errs by considering research and development costs when calculating the amount of unjust enrichment in a trade secrets case, much less that a court specifically violates Pennsylvania law and PUTSA, which are what govern this case, by doing so.

### B.    PPG's Research And Development Costs Fairly Represent The Amount Of Appellants' Unjust Enrichment Resulting From Their Misappropriation Of PPG's Opticor™ Technology

Considering how flexible and expansive PUTSA is in authorizing judges to award damages based on unjust enrichment in cases like this, the sole remaining question is whether the District Court abused its discretion, on these specific facts, by finding that PPG's research and development costs fairly reflected the amount of

the unjust enrichment.  The answer to that is a resounding no.  Indeed, no other measure better commends itself on these facts.  Appellants are trying to do precisely what the District Court called out:  "evade the consequences of their actions" and leave PPG "get[ting] nothing" after "depriving the plaintiff of a fair shot to uncover relevant information during discovery."  A37.  Neither reason nor caselaw supports Appellants' peculiar notion that scofflaws should be licensed to evade monetary liability after ripping off trade secrets to enrich themselves.

Certainly none of Appellants' cited cases forbids the District Court from using PPG's research and development costs to calculate the amount of Appellants' unjust enrichment under PUTSA.  If anything, Appellants' cases merely confirm that judicial consideration of a plaintiff's research and development costs should be tethered to the benefit a defendant derived from misappropriating their fruits.  Appellants' Br. at 21-22.

That leaves Appellants arguing that PPG's research and development costs do not adequately track how TMG was enriched.  For this, Appellants rely on *DF Institute, LLC v. Dalton Education, LLC*, No. 19-CV-452-JDP, 2020 WL 4597122 (W.D. Wis. Aug. 11, 2020) and *Deltak, Inc. v. Advanced Systems, Inc.*, 767 F.2d 357 (7th Cir. 1985) to claim that a plaintiff seeking unjust enrichment damages must show, as predicate, that a defendant obtained a tangible benefit from the misappropriation.  Appellants' Br. at 22, 25-26.  Yet Appellants' account of the

27

Seventh Circuit's position is triply misconceived:  it mischaracterizes the current state of Seventh Circuit law; it overlooks the starkly different circumstances the District Court confronted here; and it conflates ***affirmance*** of a district court's exercise of its ***discretion*** over damages with Appellants' aberrant notion that this Court should ***reverse*** such exercise here.

Take the last point first:  It bears emphasizing that the Seventh Circuit in the cited portion of *Deltak* was simply agreeing with the district judge (Judge Posner sitting by designation) that the value of the defendant's use could not fairly be valued by the number of infringing copies produced, rather than those actually used.  *See* 767 F.2d at 360-61.  Appellants cite no case from the Seventh Circuit or any other appellate court that has ***reversed*** a trial court's discretionary decision to use avoided research and development costs as the appropriate measure of unjust enrichment damages in a particular case.

In fact, the Seventh Circuit has specifically blessed such use of avoided research and development costs to calculate damages, and it has done so recently. Appellants somehow overlook the Seventh Circuit's current jurisprudence.  In *Epic Systems Corp. v. Tata Consultancy Services Ltd.*, 980 F.3d 1117 (7th Cir. 2020) the Seventh Circuit just last year spoke specifically to the precedent discussed in *Deltak* as well as case law relied upon by the *Dalton* court.  *See id.* at 1129-33.  In *Epic*, defendants had stolen plaintiff's confidential information and trade secrets, then

28

used the information to arrive at an analysis that helped defendants become a direct competitor of plaintiff in the American electronic health record market. *Id.* at 1126, 1131. The Seventh Circuit held that plaintiff's unjust enrichment damages were properly calculated based on plaintiff's own research and development costs, consistent with the "important consideration […] that a judge or jury calculates the benefit to the defendant—not the loss to the plaintiff—and that this calculation is done with reasonable certainty." *Id.* at 1130. As the Seventh Circuit explained in *Epic*, "[c]alculating the benefit conferred on a defendant to determine unjust enrichment damages is a context-specific analysis. Under Wisconsin law, the jury could award avoided research and development costs based on [the defendant] gaining a significant head start in [its] operation [. . . .] That 'head start,' the jury could conclude, came from [defendant's] use of the [stolen confidential information]." *Id.*

The same reasoning is equally apt on these facts, particularly as Appellants' conceded conduct in this case parallels what the *Epic* court found constituted "use" that had sufficiently benefited defendants. *Compare* 980 F.3d at 1131-32 *with* A27-37. For example, the record amply supports the District Court's findings that Appellants were unjustly enriched in the amount reflected in PPG's research and development costs, which Appellants avoided by stealing the trade secrets PPG had researched and developed. In particular, the record shows that Appellants

improperly acquired PPG proprietary Opticor™ Technology in order to begin developing the same technology within two years. Appellants contacted a PPG subcontractor and used PPG's proprietary photos and drawings of PPG's Opticor™ molds, asking to order five sets of a derivative of the Opticor™ mold to build competing products in China. A122 ¶38; *see also* A240-41 ¶¶22-25; ECF No. 136-1 at 75. TMG also retained engineers to design a facility to produce windows containing Opticor™ Technology, using product parameters in PPG's Proprietary Report and Rukavina's own knowledge of the product. A245 ¶5. And, TMG and Wu agreed to provide windows using the Opticor™ Technology to a railway customer within two years of working with Rukavina. A235 ¶6.

What is more, the record also shows that Appellants unlawfully acquired PPG's trade secrets to speed things up and to avoid spending the money and time associated with proper development. To quote Rukavina's own admission in this regard,

> Benhua [Wu] is playing catchup in all of these technology areas. ***He is actually saving money and more importantly time. He knows that*** and he even states on his website that he buys international technology to shorten time to manufacturing. ***He is getting 10 years of R&D which in today's value would cost at least $8 million to do in house,*** assuming you have creative enough people that can do it.

A316 (emphases added). The District Court therefore had compelling bases to find, as it did, that Appellants avoided at least $8 million and more than ten years of effort that PPG had spent developing its Opticor™ Technology. To quote the District

Court, which used the example of a "soda pop manufacturer" to illustrate its point, any such "competitor plainly w[as] enriched in the amount of R&D that it never had to do." A36.

Separately, Appellants fail to grapple with how profoundly this case differs from anything the courts confronted in *Dalton* and *Deltak*. Unlike in those cases, these Appellants altogether ***defaulted*** and thus left ***blank*** any and all discovery and proof that might have been forthcoming from them. As a result, there is no evidentiary record establishing the sort of disconnect Appellants now posit between what PPG ***expended*** to arrive at the trade secrets at issue versus what TMG ***avoided*** by stealing those trade secrets. Absent any contrary proof, and Appellants offered none, Rukavina's statement above (A316) confirms that it is only reasonable to take PPG's research and development expenditures as the best available indicator of what TMG's expenditures would have been; from there, there is no denying that the amount of TMG's avoided costs translates to the amount of TMG's unjust enrichment, as the above-cited cases, including *Epic*, all agree.

None of Appellants' cases suggests any different conclusion on this record. Judges part ways in cases like *Deltak* and *Dalton* because powerful on-point evidence—developed on a full and fair record—demonstrates a disconnect between a plaintiff's research and development costs, on the one hand, and a defendant's

31

gains, on the other.[11]    But the defense evidence that drives such decisions is conspicuously missing here.  There is, in other words, no basis for Appellants here to complain that the damages calculation somehow defies defense evidence that their gains were only trifling by comparison to PPG's investments.

Contrary to Appellants' claim, there is no "absurd result" to fear here. Appellants' Br. 26 (citing *Deltak*, 767 F.2d at 361).  If anything, it is Appellants who are bidding for an absurd result:  The perverse, inescapable upshot of their arguments are the "serious incentive concerns" cited by the District Court:  "Defendants' late-arriving arguments would incentivize parties to refuse to participate in litigation on the merits, thus depriving the plaintiff of a fair shot to uncover relevant information during discovery, then claim that because the plaintiff cannot tell the Court information that only the defendant is likely to know, the plaintiff must get nothing." A37.  Because the existing record is limited by Appellants' default and abject refusal to produce any discovery, there "is substantial uncertainty as to what Defendants did

---

[11] *See Deltak*, 767 F.2d at 360-61 (walking through serial disconnects between potential premises of the damages award and on-point, uncontested evidence refuting each); *Dalton*, 2020 WL 4597122 at *2 ("After Kaplan filed this lawsuit, Dalton hired Stroz Friedberg to conduct interviews and perform a forensic analysis to determine who at Dalton may have received Kaplan materials and what devices those materials may have been stored on. Stroz Friedberg also completed the remediation process and removed all potential Kaplan materials from Dalton's systems. As a result of the investigation, Dalton terminated Steers, Redfearn, and Redfearn's supervisor (Laramie McClurg) for retaining or discussing Kaplan documents.").

with the stolen PPG trade secrets," which "is not the same as saying Defendants actually did not" use and profit from its theft in untold ways and degrees. A37.

The District Court's exercise of discretion in crediting PPG's research and development costs as the best available proof of the amount of Appellants' unjust enrichment was not only reasonable, but irreproachable. Any other conclusion would be worse than just absurd; it would provide affirmative rewards for willful malefactors in Appellants' position to forgo any and all discovery and proof, only thereafter to leverage the resulting evidentiary gaps to insulate themselves against any substantial monetary award. To state the obvious, this would disserve the interests that PUTSA protects, and also "run[] completely counter to the purpose of modern civil litigation, common sense, [and] substantial justice" more broadly. A37.

In this regard, it bears underscoring just how contemptuous and culpable Appellants have been in their approach to PPG's trade secrets as well as this litigation in prior years. *See, e.g.*, A2-3; A36-37; A145-47. It also bears noting that, had Appellants properly appeared and participated in discovery below, they could and would have been held accountable for any discovery deficiencies that emerged. In particular, any spoliation by Appellants—including willful failure to produce evidence—could have triggered sanctions up to and including presumptions, instructions, and findings for PPG on liability and damages alike. *See* Fed. R. Civ.

33

P. 37(e) ("[U]pon finding that a party acted with the intent to deprive another party of the information's use in the litigation [the court] may:  (A) presume that the lost information was unfavorable to the party; (B) instruct the jury that it may or must presume the information was unfavorable to the party; or (C) dismiss the action or enter a default judgment.").[12]  In light of this settled law, it would be upside-down to treat Appellants *better* by virtue of the fact that they totally stonewalled PPG and the court and refused to produce *any* discovery whatsoever.  Assuming arguendo that Appellants are not altogether legally foreclosed from indicting the evidentiary case on damages that they refused to contribute to, it is only fair and sensible to hold them to the evidentiary record as it exists, including the reasonable inferences that flow therefrom.

Against this telltale, unrefuted evidence and straightforward reasoning, Appellants assert that they ostensibly "obtained no commercial benefit from any use

---

[12]    *See also Capogrosso v. 30 River Court East Urban Renewal Co.*, 482 F. App'x 677, 682 (3d Cir. 2012) (noting that "[i]n the event that a party undertakes spoilage, the sanctions available to a court include dismissal of the relevant claim or a presumption by the fact finder that the spoiled evidence was harmful to the offending party's case."); *Bull v. United Parcel Service, Inc.*, 665 F.3d 68, 73 (3d Cir. 2012) (reviewing sanctions for abuse of discretion and reaffirming that "under certain circumstances, nonproduction of evidence is rightfully characterized as spoliation"); *Schroeder v. Com., Dep't. of Transp.*, 551 Pa. 243, 250-51 (1998) (adopting this Court's approach in *Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76 (3d. Cir. 1994) and fashioning spoliation sanctions designed to discourage intentional destruction of evidence).

of PPG's trade secrets," and therefore were not enriched by their misappropriation of the Opticor™ Technology. Appellants' Br. at 20. But their reasoning is misguided, at best. Even if further smoking-gun proof of specific commercial benefits is lacking (because Appellants withheld any and all discovery that might further illuminate it, *see* A37), it cannot possibly follow that Appellants were not enriched, as this Court recently explained in *Oakwood*. *See* 999 F.3d at 914. ("[E]ven if it is true that Defendants have not yet launched a competing product, that does not mean [plaintiff] is uninjured. It has lost the exclusive use of trade secret information, which is a real and redressable harm.").

This Court's holding in *Oakwood* applies in force here, yet Appellants try to overcome it by noting that *Oakwood* addressed the meaning of the term "use" for purposes of establishing a *prima facie* case of misappropriation, and arguing that calculating harm for purposes of awarding damages should be considered categorically different. Appellants' Br. at 28. But *Oakwood* does not admit of any such distinction between the evidence establishing misappropriation versus the evidence establishing damage. To the contrary, when this Court in *Oakwood* spoke to how a plaintiff is "[]injured" and suffers "real and redressable harm," 99 F.3d at 914, it was very clearly speaking to the damages inquiry now at issue. Indeed, *Oakwood* credits precisely the types of commercial harm that is evident in this case. In particular, such harm includes a defendant "avoid[ing] substantial research and

35

development costs that [the plaintiff] has already invested in its own product development," which numbers among the enumerated harms that "represent a sample of the several approaches by which the ***amount of harm***—not simply the fact of harm (which inheres in the unlawful use itself)—***may be measured***." *Id.* (emphases added). In sum, this Court could hardly have made clearer in *Oakwood* that Appellants' avoidance of research and development costs may serve to "measur[e]" the "amount of harm" in a trade secrets case such as this. *See id.* That recognition perfectly accords with that of the Seventh Circuit in *Epic*, *see* 980 F.3d at 129-33, and of the District Court in this case, *see* A36.

Nor does this record leave any doubt that the District Court's chosen measure fits these facts. As noted *supra*, unrefuted evidence proves and Appellants cannot deny that they avoided substantial research and development costs by improperly acquiring PPG's Opticor™ Technology, then using PPG's trade secrets to initiate steps necessary to develop their own products from the Opticor™ Technology. Moreover, Appellants were rushing to commercialize products containing the Opticor™ Technology within two years of acquiring PPG's information. That translates to competitive harm that PPG was suffering from a competitor that was piggy-backing for free, and also, correspondingly, to unjust enrichment that Appellants were deriving. *See* A36. Appellants are left without any colorable

36

argument that the District Court abused its discretion by calculating and awarding unjust enrichment damages as it did.[13]

## IV.    THE DISTRICT COURT'S AWARD OF EXEMPLARY DAMAGES SHOULD BE SUSTAINED

Last, Appellants maintain that PPG's award of exemplary damages should be reduced or voided if, following this Court's review, it more than doubles the compensatory damage award.  *See* Appellants' Br. at 29.  Because this point depends entirely on the compensatory damages award being reduced or voided as urged by Appellants, it fails for the same reasons that Appellants' challenge to the compensatory award fails.  *See supra*.  Appellants offer no separate basis for disturbing the existing award of exemplary damages or the underlying finding that such damages are warranted by Appellants' willful and malicious misappropriation of PPG's trade secrets.  Accordingly, this Court should affirm the award of exemplary damages no less than the award of compensatory damages.

---

[13] While challenging the District Court's decision to use PPG's research and development costs to measure unjust enrichment damages, Appellants do not otherwise challenge specifics of the calculation.  In particular, Appellants do not challenge how the District Court calculated $8,805,929 as the amount that PPG in fact spent to develop the Opticor™ Technology from 2004 through parts of 2015, nor could they, given on-point, unrefuted evidence substantiating that calculation.  *See, e.g.*, A354-61; A367-78.

## CONCLUSION

For the foregoing reasons, PPG respectfully requests that this Court affirm the

District Court's judgment.

Respectfully submitted,

**DENTONS COHEN & GRIGSBY P.C.**

Robert M. Linn (PA No. 44777)
Ingrid A. Bohme (PA No. 309157)
625 Liberty Ave.
Pittsburgh, PA 15222
Telephone: (412) 297-4615
Facsimile: (412) 209-1975
E-mail: robert.linn@dentons.com
E-mail: ingrid.bohme@dentons.com

**QUINN EMANUEL URQUHART & SULLIVAN LLP**

/s/ *Alexander J. Merton*
William A. Burck (DC No. 979677)
Derek L. Shaffer (DC No. 478775)
Alexander J. Merton (DC No. 1029439)
1300 I Street, NW
Suite 900
Washington, DC 20005-3314
Telephone: (202) 538-8000
Facsimile: (202) 538-8100
E-mail: williamburck@quinnemanuel.com
E-mail: derekshaffer@quinnemanuel.com
Email: ajmerton@quinnemanuel.com

*Counsel to PPG Industries, Inc.*

January 6, 2022

## CERTIFICATE OF BAR MEMBERSHIP

Pursuant to L.A.R. 28.3(d), I hereby certify that I am a member in good standing of the bar of the United States Court of Appeals for the Third Circuit.

Dated: January 6, 2022

/s/ *Alexander J. Merton*
Alexander J. Merton
Quinn Emanuel Urquhart & Sullivan LLP
*Counsel to PPG Industries, Inc.*

## **CERTIFICATE OF COMPLIANCE**

In accordance with the Federal Rules of Appellate Procedure and this Court's Rules, I certify the following:

1.     This brief complies with the type volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 8,944 words, excluding the parts exempted by Federal Rule of Appellate Procedure 32(f).

2.     This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Office 2016 Word in Times New Roman font, type 14 point.

3.     Pursuant to Third Circuit Local Appellate Rule 31.1(c), the text of the brief filed electronically with the Court via CM/ECF is identical to the text of the paper copies.

4.     The electronic version of the brief has been scanned for viruses by the Vipre Virus Protection, version 3.1, and no viruses were detected.

Dated: January 6, 2022

/s/ *Alexander J. Merton*
Alexander J. Merton
Quinn Emanuel Urquhart & Sullivan LLP
*Counsel to PPG Industries, Inc.*

## **CERTIFICATE OF SERVICE**

Pursuant to Federal Rule of Appellate Procedure 25(d) and Local Rule 27.2, I certify that on January 6, 2022, counsel caused the foregoing Brief to be electronically filed with the Clerk of the United States Court of Appeals for the Third Circuit using the appellate CM/ECF system. Service on counsel for all parties has been accomplished via CM/ECF.

Dated: January 6, 2022

/s/ *Alexander J. Merton*
Alexander J. Merton
Quinn Emanuel Urquhart & Sullivan LLP
*Counsel to PPG Industries, Inc.*